```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Jason Jones,                   :

        Plaintiff,             :    Case No.  2:11-cv-871

  v.                           :    JUDGE GREGORY L. FROST
                                    Magistrate Judge Kemp
Warden, Ross Correctional      :
Institution, et al.,
                               :
        Defendants.
```

REPORT AND RECOMMENDATION

Plaintiff, Jason Jones, an inmate who was housed at Ross Correctional Institution at the time relevant to this action, filed this action against several state employees in their individual and official capacities pursuant to 42 U.S.C. §1983. Defendants have filed a motion for summary judgment, which is now fully briefed. For the reasons set forth below, the Court recommends that the motion be granted.

I. Introduction

The Court previously ruled on a motion to dismiss which defendants had filed in response to Mr. Jones' complaint. The Report and Recommendation (Doc. 16) which addressed the motion to dismiss summarized the complaint's allegations in this way:

> From May 8, 2009 to the time of the filing of the complaint, Defendants Lieutenant Lunsford, Lieutenant Morison, and Lieutenant Powers, all employees at the Ross Correctional Institution, conspired "on multiple occasions" to place Mr. Jones in harm's way "by repeatedly moving him to housing units that are [d]angerous to him[] [i]n a[n] attempt to kill or seriously injure him and extort plaintiff to work without proper pay from the state." In addition, defendant prison officials "conspired to sexually [harass], [oppress], extort and place hits on plaintiff by paying inmates with tobacco and sex." Mr. Jones claims to have been brutally assaulted on multiple

> occasions and has received multiple injuries including partial loss of vision in one eye.
>
> Furthermore, Mr. Jones claims that defendant prison officials Jeffreys and Whitten "demonstrated deliberate indifference and [dereliction] of duty in violation of Ohio Revised Code 2941.44 [sic 2921.44]." In particular, he asserts that they failed to take corrective action to address the risk faced by Mr. Jones when they received a grievance on June 14, 2011. As a part of that failure, they disapproved Mr. Jones's request for protective custody.

Mr. Jones also sought injunctive relief based on the fact that, when he filed the complaint, he was confined in disciplinary segregation in lieu of a placement in protective custody. However, after the complaint was filed, he was transferred to a different correctional institution. The Court's order of May 24, 2012 (Doc. 20) dismissed his claim for injunctive relief. That order also dismissed all claims against defendant Whitten.

The remaining defendants in the case are three lieutenants from the Ross Correctional Institution - Lieutenants Lunsford, Morrison, and Powers - and that institution's former Warden, Rob Jeffreys. They have moved for summary judgment on a number of grounds, including failure to exhaust administrative remedies with respect to the claims against the three lieutenants; the Eleventh Amendment's bar to damage claims brought against all state officials in their official capacities; the lack of any specific factual allegations in support of Mr. Jones' conspiracy claim; and, as to defendant Jeffreys, the fact that he acted reasonably based on what he knew when he denied Mr. Jones' requests for protective custody. The Court will address only three of these arguments below, finding no need to discuss the conspiracy claim due to the lack of any evidence of an actionable constitutional violation.

## II.  Legal Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962).

The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion must be decided.

## III.  The Facts

The facts which the Court must take as true for purposes a summary ruling are those which have been properly supported. As Fed.R.Civ.P. 56(c) states, proper support for facts at this stage of the case can come from "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials...." One common feature of all these types of information is that they be properly authenticated or sworn to. As the Court of Appeals has said, "it would [be] improper for the district court to consider documents that were not admissible in evidence" when ruling on a summary judgment motion. Alexander v. CareSource, 576 F.3d 551, 561 (6th Cir. 2009). Here, the only documents meeting this description, and, therefore, which may properly be considered by the Court, are the ones attached to defendants' motion. Mr. Jones has not filed any affidavits, declarations, or authenticated documents. Consequently, the factual background of the case recited here is based exclusively on the documents which defendants have filed.

The affidavits submitted by defendants show the following. First, according to the affidavit of Robert Whitten, the Institutional Inspector at Ross Correctional, Mr. Jones never filed an "Informal Complaint Resolution," the first step of the inmate grievance process, while at RCI. Mr. Jones did ask for a form, known as "Notification of Grievance," in April, 2011 - in fact, he asked for four of them - but when Mr. Whitten met with Mr. Jones to discuss why Mr. Jones thought he was allowed to skip the first step of the grievance process and proceed directly to the second step (which is what the Notification of Grievance form is for), he was so vague about the details of his complaint that Mr. Whitten did not give him the forms. In fact, Mr. Jones refused to provide details, instead telling Mr. Whitten he would wait and gather more evidence in his favor before filing a

grievance.  He also denied any need to be transferred to safer housing.

The following month, Mr. Jones asked for one Notification of Grievance form.  Mr. Whitten sent him the form, first completing the areas for the inmate's name, number, housing unit, and institution.  The instructions stated that the form was to be returned to Mr. Whitten as the Institutional Inspector.  Mr. Jones did not do that, but sent his grievance, which complained about all three lieutenants who are defendants in this case, to the Chief Inspector's Office in Columbus.  That is the third step of the normal grievance process.  The Chief Inspector, Gary Croft, refused to consider the merits of the grievance because Mr. Jones had not gone through the first two steps of the process.  All of the documents described in Mr. Whitten's affidavit are attached to his affidavit and authenticated by him.

The three lieutenants involved in this case also signed affidavits, and those are attached to the summary judgment motion as well.  Doc. 42, Exhibits 5, 6 and 7.  The affidavits are very similar.  Lieutenant Lunsford recalled one incident in 2010 where she wrote Mr. Jones a ticket (but only after having her recollection refreshed with a copy of the ticket), but otherwise denied any knowledge of him, any responsibility for where he was housed, and any conspiracy with the other two lieutenants to have inmates harm Mr. Jones.  The other two said basically that they did not know who Mr. Jones was and, in any event, never made housing decisions for him or encouraged other inmates to harm him.

The only other pertinent affidavit is that of former warden Rob Jeffreys, which is Exhibit 2 to the motion for summary judgment.  Warden Jeffreys, in a very brief statement, says that his policy as Warden was to insist on "verifiable facts and circumstances" before granting a request for protective custody.

He had granted such requests from RCI inmates when those facts and circumstances were present. In Mr. Jones' case, however, due to the fact that "Inmate Jones was unwilling and/or unable to establish verifiable facts and/or circumstances to justify his approved placement in protective control," Warden Jeffreys denied the requests. Nevertheless, in what is described at the "interest of administrative efficiency," Mr. Jones was administratively transferred to a different institution. Had he been approved for protective custody, he would have remained in security control pending his transfer to a protective custody unit.

Taking Mr. Whitten's and Warden Jeffreys' affidavits together, the record shows that Mr. Jones did not file informal grievances against the three lieutenants involved in this case, and that Warden Jeffreys denied Mr. Jones' request for placement in protective custody because the facts underlying that request could not be substantiated. The question then becomes whether the defendants are entitled to summary judgment on the basis of these facts.

## IV. Official Capacity Damage Claims

Defendants argue that any damage claims asserted against them in their official capacities are, in reality, claims against the State of Ohio, and are barred by the Eleventh Amendment to the United States Constitution. Mr. Jones responds to this argument by referring to principles of municipal liability. His argument is simply misplaced.

Municipalities are not the equivalent of the State itself and do not enjoy Eleventh Amendment immunity. The Eleventh Amendment "does not extend to counties and similar municipal corporations." Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977). On the other hand, it does apply to state entities such as the Ohio Department of

6

Rehabilitation and Correction.  While "[t]he eleventh amendment does not prevent plaintiffs from bringing suits for money damages against state officials provided that the defendants are sued in their individual capacities," Foulks v. Ohio Department of Rehabilitation and Correction, 713 F.2d 1229, 1233 (6th Cir. 1983), there are numerous cases holding that "the Eleventh Amendment bars §1983 suits seeking money damages against states and against state employees sued in their official capacities." Rodgers v. Banks, 344 F.3d 587, 594 (6th Cir. 2003).  That rule has specifically been applied to suits against corrections officers employed by the ODRC.  See, e.g., Dotson v. Wilkinson, 477 F.Supp. 2d 838, 852 (N.D. Ohio 2007); Leonard v. Moore, 2012 WL 5830251, *3 (S.D. Ohio Nov. 16, 2012), adopted and affirmed 2012 WL 6139001 (S.D. Ohio Dec. 11, 2012).  To the extent that Mr. Jones makes such claims, the Court is required to dismiss them on Eleventh Amendment grounds.

## V.  Exhaustion

42 U.S.C. §1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Although failure to exhaust administrative remedies is an affirmative defense, see Jones v. Bock, 549 U.S. 199 (2007), once that defense is raised in a motion for summary and properly supported, in order to avoid an adverse judgment, the inmate must produce evidence that there is a genuine factual dispute about his failure to exhaust.  See, e.g., Napier v. Laurel County, Ky., 636 F.3d 218, 225 (6th Cir. 2011) ("Once the defendants put forth evidence [of failure to exhaust], Napier was required to present 'significant probative evidence' to defeat the motion for summary judgment on this ground").

As this Court noted in Mays v. Ohio, 2012 WL 423761, *2 (S.D. Ohio Feb. 9, 2012), adopted and affirmed 2012 WL 870858 (S.D. Ohio March 14, 2012),

> Ohio has established a procedure for resolving inmate complaints. Ohio Admin. Code § 5120-9-31. To properly exhaust a claim seeking relief "regarding any aspect of institutional life that directly and personally affects the [inmate]," an inmate at ODRC must comply with its three-step grievance system. Ohio Admin. Code § 5120-9-31(K). For the first step, the inmate must submit an informal complaint to the staff member or to the direct supervisor of the staff member or to the department most directly responsible over the subject matter with which the inmate is concerned. Ohio Admin. Code § 5120-9-31(K)(1). Such action must be taken "[w]ithin fourteen calendar days of the date of the event giving rise to the complaint ...." *Id*. If the inmate is not satisfied with the results, he may take the second step by filing a formal grievance with the inspector of institutional services at the prison where he is confined. Ohio Admin. Code § 5120-9-31(K)(2). That inspector will investigate the matter and issue a written response to the inmate's grievance within fourteen calendar days of receipt. Id. If the inmate is still dissatisfied, he may pursue the third step, which is an appeal to the office of the Chief Inspector of ODRC. Ohio Admin. Code § 5120-9-31(K)(3). This appeal must be filed within fourteen days of the disposition of the formal grievance. *Id*.

Defendants, through the Whitten affidavit, have established that Mr. Jones did not follow these procedures with respect to his claims against the three lieutenants. Once defendants submitted this evidence, as the Napier case holds, it became Mr. Jones' burden to show that the effort he made to exhaust these claims was proper. Defendants recognize that, in some instances, the first step of the grievance process may be bypassed if the grievance implicates Ohio Administrative Code §5720-9-04, which is entitled "Appropriate supervision, discrimination and racial issues." See §5120-9-31(K)(1). "Inappropriate supervision"

8

includes "any continuous method of annoying or needlessly harassing an inmate ..., including, but not limited to, abusive language, racial slurs, and the writing of inmate conduct reports strictly as a means of harassment." O.A.C. §5720-9-04. Mr. Whitten made a determination that Mr. Jones' proposed grievance did not fit within this definition. The grievance itself makes a large number of very serious allegations, but defendants have come forward with evidence that none of these allegations are true. Mr. Jones has not put forth any evidence to show otherwise; even if he had, he did not skip just the first step of the process, as §5120-9-31(K)(1) would authorize, but the first two. He filed his grievance directly with the Chief Inspector, a method permitted only for "[g]rievances against the warden or inspector of institutional services...." O.A.C. §5120-9-31(M). It was rejected as having been improperly filed.

Under these circumstances, no genuine factual issue exists about whether Mr. Jones filed a proper grievance against the three lieutenants. Clearly, he did not. An inmate who files a grievance but does not do so properly, that is, as required by the written grievance process, has not met the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 84 (2006)(under the PLRA, "proper exhaustion of administrative remedies is necessary"). Consequently, the three lieutenant defendants are entitled to summary judgment on this ground and to the dismissal of all of Mr. Jones' claims against them.

### VI. Claims against Warden Jeffreys

Mr. Jones' claim against Warden Jeffreys is that after the Warden, though the grievance which Mr. Jones filed, became aware that the lieutenants were placing Mr. Jones in danger, he failed to do anything to correct the problem, including placing Mr. Jones in protective custody. Mr. Jones adds to that allegation the claim that Warden Jeffreys placed him in disciplinary

9

segregation simply because there was no protective custody placement available at RCI.

In its prior Report and Recommendation, the Court held that these allegations, if true, supported a claim against Warden Jeffreys under the Eighth and Fourteenth Amendments. That is enough for a claim to survive a motion to dismiss. However, in order for this claim to survive summary judgment, especially in the face of an affidavit from Warden Jeffreys stating that these allegations are all false, Mr. Jones had to provide some type of competent evidence supporting the assertions he made in his complaint. As the Court has pointed out above, "the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment." Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 150 (6th Cir. 1995). Again, he has not done so.

Contrary to Mr. Jones' unsupported allegations, Warden Jeffreys' affidavit establishes that protective custody, rather than simply disciplinary control, is available for inmates at RCI. This negates the claim that Mr. Jones was placed in disciplinary segregation simply as a means to grant him protective custody status. Further, the affidavit shows that Mr. Jones never actually met the criteria for protective custody because he did not or would not provide specific facts to support his request for protection. In the absence of any proof that Warden Jeffreys either knew of, or was recklessly indifferent to the existence of, facts showing that Mr. Jones was in danger, the Warden did not violate Mr. Jones' constitutional rights. As the Court said in its prior Report and Recommendation, Doc. 16, at 9,

> In the context of an Eighth Amendment failure to protect claim, in order for a denial of a grievance to rise to the level of a constitutional violation, there must be allegations that the defendant had subjective

10

>knowledge of the threats and that the defendant acted unreasonably in disregarding the risk. Williams v. McLemore, 247 Fed. Appx. 1 (6th Cir. June 19, 2007) (holding that plaintiff failed to state a claim against several defendants involved in the grievance process but did state a claim against one defendant involved in the grievance process).

The factual record before the Court does not support this claim. Defendant Jeffreys is therefore entitled to summary judgment as well. In light of the absence of any evidence of a constitutional violation, Mr. Jones cannot succeed on any claim that the defendants conspired to violate his rights. See Anderson v. County of Hamilton, 780 F.Supp. 2d 635, 652 (S.D. Ohio 2011)(in order for a conspiracy claim to succeed, "plaintiff must allege facts showing not only an agreement by defendants to violate plaintiff's constitutional rights, but also an actual deprivation of a constitutional right"). Mr. Jones has not shown the Court that any material factual disputes exist with respect to his claim of a constitutional violation, so his conspiracy claims - whatever their basis - fail.

## VII.  Recommendation

For these reasons, it is recommended that Defendants' Motion for Summary Judgment (Doc. 42) be granted and that this case be dismissed.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
